926 A.2d 387 (2007)
394 N.J. Super. 278
KAS ORIENTAL RUGS, INC., Plaintiff-Appellant/Cross-Respondent,
v.
Matt ELLMAN, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2007.
Decided March 6, 2007.
*388 Jeffrey Schreiber argued the cause for appellant/cross-respondent (Meister, Seelig & Fein, attorneys; Mr. Schreiber and Racquel Crespi Weintraub, on the brief).
Steven C. Moore (Watje & Moore) of the Minnesota bar admitted pro hac vice, argued the cause for respondent/cross-appellant (Kozyra & Hartz, and Mr. Moore, attorneys; Mr. Moore, Barry A. Kozyra and Raj Gadhok, on the brief).
Before Judges WEFING, C.S. FISHER and MESSANO.
The opinion of the court was delivered by
FISHER, J.A.D.
The disputes about the rights and obligations of a sales representative and his principal in this matter were resolved by way of a bench trial. The judge found that, upon the representative's termination, the parties' oral contract required only that the principal pay the commissions due on orders received as of the termination date, but he nevertheless awarded post-termination commissions on a quantum meruit theory. Because we conclude that the award of post-termination commissions was inconsistent with the terms of the contract, we reverse.

I
Plaintiff Kas Oriental Rugs, Inc. is an importer and seller of oriental rugs. In August 1999, Kas and defendant Matt Ellman, an independent sales representative, *389 entered into an oral contract. As the trial judge found, they agreed on "[t]erritory, commission percentage, nature and type of material to be sold," all of which was "sufficient to constitute a contract binding between the parties." The judge also found that, in this industry, a principal's obligation to pay commissions does not arise "until orders [are] received, shipped and paid for." Although he recognized that the parties' oral contract did not specifically define the parties' rights and obligations upon Ellman's termination, the judge found that the absence of such terms was not essential to the creation of a contract. He filled this gap in the parties' agreement by concluding that the relationship was terminable at will, as was the custom in the industry:
The [c]ourt is satisfied from the testimony of the witnesses, including the witness  the expert witnesses from both sides, that the nature of the relationship in the industry between a manufacturer and a manufacturer's rep[resentative] is effectively termination at will. Kas was an experienced manufacturer of oriental rugs. Ellman was an experienced and astute manufacturer's representative, having been in the business in excess of ten years. Each side knew the custom of the trade. The fact that termination was not discussed is not, in light of the totality of the circumstances and the nature and practice and custom of the industry, unusual nor is it an essential missing term.
Having found that Ellman was terminable at will, the judge found "[f]rom the testimony of all witnesses presented" that it was "clear that commissions are typically not paid after termination except on orders received in-house prior to termination."
Problems arose with the parties' relationship in 2001, when Kas became concerned about Ellman's representation of Kas competitors, and attempted to impose a restrictive covenant on Ellman and other representatives.[1] Notwithstanding, it appears that Ellman continued to represent Kas competitors. In addition, there was also testimony that Ellman was "a difficult person to work with." These circumstances culminated in Kas's decision to end their relationship, writing to Ellman on February 27, 2004 that as of March 1, 2004 his services were "no longer required."
The trial judge determined that the discharge of Ellman was not wrongful, holding that "it cannot be said nor concluded that the termination by Kas breached the agreement." The judge also found that the parties' contract required only that Kas pay Ellman for the commissions on purchase orders that were "in house" as of March 1, 2004, which was stipulated at trial as $12,774.02. That amount was awarded to Ellman. In addition, the judge rejected Kas's claim that the commissions of $12,774.02 should be reduced by application of a credit of $4,375.
In the February 27, 2004 termination letter, Kas offered to pay Ellman commissions through April 30, 2004. At trial, Kas moved into evidence the deposition of its president, Rao Yarlagadda, which included his testimony that the offer to pay commissions for two months beyond the termination date was "a good will gesture." At trial, Joan Catello, Kas's national vice-president of sales, testified that Kas decided to make this offer "to avoid any litigation, which we felt would be costly on both parties."
*390 Ellman's attorney objected, on relevance grounds, to additional testimony from Catello regarding this offer of post-termination commissions. Kas's attorney responded that he was seeking to demonstrate that this offer should not be viewed as an admission that Kas "had to pay this." When Ellman continued to press the objection, the following colloquy occurred:
[ELLMAN'S ATTORNEY]: Judge, that's not relevant.
[KAS'S ATTORNEY]: If we can stipulate that [the letter's offer of commissions after the termination date] is not an admission that we owe that money, then I have no questions on the subject.
[ELLMAN'S ATTORNEY]: I am not going to stipulate to that.
[KAS'S ATTORNEY]: Well, then it is relevant, isn't it?
. . . .
THE COURT: . . . So there was an offer to resolve the issue. I am satisfied . . . [t]hat it is not an admission and that the only reason that the offer was made is to avoid what we are doing here.
[KAS'S ATTORNEY]: That's right. Okay. In that case, your Honor, I can move on.
THE COURT: Yes.
In short, the judge determined that Kas had offered to pay commissions earned beyond the termination date in an attempt to avoid litigation, which rendered the offer inadmissible to prove Kas's alleged liability to pay Ellman post-termination commissions. See N.J.R.E. 408 ("When a claim is disputed as to validity or amount, evidence of statements or conduct by parties or their attorneys in settlement negotiations . . . including offers of compromise or any payment in settlement of a related claim, shall not be admissible to prove liability for, or invalidity of, or amount of the disputed claim").
Despite the judge's finding that Kas's offer to pay two months' worth of post-termination commissions was an offer of settlement, and despite the finding that the contract required only the payment of commissions on orders that were "in house" at the time of termination, the trial judge held that Ellman was entitled to $15,987.33 in post-termination commissions based on a quantum meruit theory, explaining:
This [c]ourt finds that the inclusion in the termination letter constitutes what all the witnesses have said is a recognition of what's fair and reasonable. Indeed, even Kas's own witnesses . . . indicated that in their experience there's a movement in the industry towards compensation for orders received as a result of the manufacturer's rep[resentative]'s efforts for some reasonable time after termination.
. . . .
[T]o deny [Ellman] compensation and terminate [him] at will smacks of a lack of reasonableness. For that very reason, Kas may have included in its termination letter compensation through April 30th as opposed to a straight cut-off of compensation for sale orders in-house as of the date of termination. . . . The law has and must recognize the advancement of technology to the point where fundamental fairness dictates that reasonable compensation be paid to the manufacturer's [rep]resentative.
In light of these findings, the trial judge entered a judgment on March 13, 2006, which awarded Ellman $12,774.02 (the stipulated amount of commissions due on the termination date), $15,987.33 (an amount awarded on the quantum meruit theory, representing commissions on purchase orders that were received "in house" *391 over a ten month period after the termination date), and a total of $48,736.95 in counsel fees and costs.[2]

II
Kas appealed, arguing that (a) the judge's finding of an enforceable oral contract, which included only a requirement that Kas pay commissions on purchase orders that were "in house" by the termination date, precluded an award of post-termination commissions based on a quantum meruit theory; and (2) an award of counsel fees was not permitted or, even if such an award was permitted, the amount awarded was excessive and unreasonable. Ellman cross-appealed, arguing that the trial judge should have awarded additional counsel fees and costs.

A
Our standard of review requires that we defer to a judge's factual findings in a non-jury matter when those findings are supported by adequate, substantial and credible evidence. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974).
Having carefully reviewed the record in light of the issues raised, we are satisfied that there was ample evidence to support the judge's findings that the parties' orally agreed on all material terms at the time their relationship was formed. The record also supports the judge's finding that the parties' contract was enforceable even though the parties were silent both as to when Kas could terminate Ellman and as to their rights and liabilities upon such a termination.
We also agree with the judge's decision to fill this gap in the parties' contract by determining, based upon customs in the industry, that Ellman was terminable at will and that, upon termination, Ellman possessed only a right to the payment of commissions on purchase orders that were "in house" on the effective date of his termination. This construction of the parties' contract, a matter of law that we examine by de novo review, Balsamides v. Protameen Chem., Inc., 160 N.J. 352, 372, 734 A.2d 721 (1999); Manalapan Realty, L.P. v. Tp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995), represents a proper resolution of the question. As the Court held in Palisades Props. Inc. v. Brunetti, 44 N.J. 117, 130, 207 A.2d 522 (1965), "[w]here fairness and justice require, even though the parties to a contract have not expressed an intention in specific language, the courts may impose a constructive condition to accomplish such a result when it is apparent that it is necessarily involved in the contractual relationship." See also Satellite Entertainment Ctr., Inc. v. Keaton, 347 N.J.Super. 268, 276, 789 A.2d 662 (App.Div.2002) (holding that "when the essential parts of a contract are spelled out, a court will not refuse to enforce that contract because some of its less critical terms have not been articulated").
In concluding that Kas was obligated to Ellman in the amount of $12,774.02, the judge not only found that the contract limited Ellman's rights to the payment of commissions due as of the termination date, but also that Kas was not entitled to a credit against those commissions in the amount of $4,375. The judge's finding regarding this alleged credit is supported by the evidence and entitled to our deference.
*392 Kas contends that the judge's award of post-termination commissions was erroneous. As we have observed, the judge based this award not on what he perceived to be Kas's contractual obligations but by finding that quantum meruit required this additional award. Our standard of review requires that we conduct de novo review of the judge's legal conclusion that quantum meruit may apply even in the face of an express contract that is dispositive of the same matter.
"Quantum meruit," which literally means "as much as is deserved," see Kopin v. Orange Prods., Inc., 297 N.J.Super. 353, 367, 688 A.2d 130 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997); La Mantia v. Durst, 234 N.J.Super. 534, 537, 561 A.2d 275 (App.Div.), certif. denied, 118 N.J. 181, 570 A.2d 950 (1989), is applied when, absent a manifest intention to be bound, "one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust," Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437, 608 A.2d 280 (1992). Stated another way, the basis for the application of quantum meruit is "wholly unlike an express or implied-in-fact contract in that it is `imposed by the law for the purpose of bringing about justice without reference to the intention of the parties.'" Saint Barnabas Med. Ctr. v. County of Essex, 111 N.J. 67, 79, 543 A.2d 34 (1988) (quoting Saint Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co., 32 N.J. 17, 22, 158 A.2d 825 (1960)).
It has long been recognized that the existence of an express contract excludes the awarding of relief regarding the same subject matter based on quantum meruit. For example, in Moser v. Milner Hotels, Inc., 6 N.J. 278, 279, 78 A.2d 393 (1951), the parties entered into a contract whereby plaintiff agreed to wallpaper defendant's hotel at the rate of $14 per room and $50 for the lobby. He papered the lobby and two rooms, and sent defendant a bill for $78, which defendant paid. Ibid. Plaintiff then papered nine more rooms and billed defendant $252, or $28 per room, which defendant refused to pay. Ibid. During trial, plaintiff was permitted to offer parol evidence based upon his assertion that he was also seeking quantum meruit relief. In considering the adequacy of the judgment based upon an award that exceeded what the express contract required, the Court held
It is a well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject. The parties are bound by their agreement, and there is no ground for implying a promise. It is only when the parties do not agree that the law interposes and raises a promise. When an express contract exists, there must be a rescission of it before the parties will be remitted to the contract which the law implies, in the absence of that agreement which they made for themselves.
[Id. at 280-81, 78 A.2d 393 (quoting Voorhees v. Combs, 33 N.J.L. 494, 496-97 (E. & A. 1869)).]
See also Pericin v. Denburg's Modern Bakery, 130 N.J.L. 547, 553, 33 A.2d 825 (E. & A.1943); Osterling v. Cape May Hotel Co., 82 N.J.L. 650, 653, 83 A. 887 (E. & A.1912); Shalita v. Tp. of Washington, 270 N.J.Super. 84, 90-91, 636 A.2d 568 (App.Div.1994).
Of course, it is true that implied provisions may be deemed included within an express contract, but these implied terms do not override express, inconsistent terms; they are imposed to fulfill the intentions of the parties. See, e.g., Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 419-20, 690 A.2d 575 (1997) (holding *393 that although "every contract in New Jersey contains an implied covenant of good faith and fair dealing," that implied covenant "cannot override an express termination clause"). Also, as we have held here, when a contract is found to have emanated from an agreement on essential material terms, a court will also fill the gaps created by the parties' silence by adding terms that accomplish a result that was necessarily involved in the parties' contractual undertaking. See, e.g., Palisades, supra, 44 N.J. at 130, 207 A.2d 522; Satellite Entertainment, supra, 347 N.J.Super. at 276, 789 A.2d 662. These concepts, however, have not opened the door to the adoption of implied terms or the enforcement of implied contracts that are inconsistent with the parties' express contract. The law continues to prohibit the enforcement of an implied contract or an implied provision that conflicts or is inconsistent with the parties' express contract, as held in Moser.
This does not mean that Ellman was not entitled to pursue a recovery on both theories. Our rules permit the pleading and pursuit of alternative and even inconsistent theories. See, e.g., Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 564, 410 A.2d 674 (1980). Ellman was entitled to proceed to trial on both a contract theory as well as a quantum meruit theory. But he was not permitted to obtain recovery on inconsistent theories. See, e.g., Caputo v. Nice-Pak Prods., Inc., 300 N.J.Super. 498, 504, 693 A.2d 494 (App.Div.), certif. denied, 151 N.J. 463, 700 A.2d 876 (1997). The parties' contract, as the judge found, provided for Ellman's right to commissions that accrued as of the termination date, but nevertheless awarded post-termination commissions on a quantum meruit theory. Since Moser militates against the granting of a remedy based on a quantum meruit theory that is inconsistent with the terms of an express contract, the judge's award of post-termination commissions cannot stand.
Although not necessary to our decision, we also observe that the judge chiefly relied on the February 27, 2004 termination letter as a basis for awarding post-termination commissions. As mentioned earlier, the judge ruled during the course of the trial that this letter constituted an offer of settlement and not an admission of liability. Having found that this was an offer of settlementa finding amply warranted by the trial testimonythe judge could not thereafter adopt a contrary interpretation of the letter that finds no support in the record. Accordingly, to the extent that the judge's finding that Kas was obligated to pay post-termination commissions to Ellman was based on the termination letter, that finding was unsupported by the evidence and otherwise manifestly unjust in the circumstances.[3]Rova Farms, supra, 65 N.J. at 484, 323 A.2d 495 (holding that an appellate court will not disturb a judge's findings unless convinced they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice").
The judge also found that the awarding of post-termination commissions was fair and reasonable because "there's a movement in the industry towards compensation for orders received as a result of the manufacturer's rep[resentative]'s efforts for some reasonable time after termination." We have carefully reviewed the *394 record, as well as the testimony of the witnesses relied upon by the judge in making this finding, and can find no support in the record for the finding of such an industry trend. We, thus, give no deference to this finding. Moreover, even assuming the industry is now trending toward the adoption of such a custom does not support but rather precludesa finding that the custom already existed when the parties' contracted in 1999.
To summarize, we reverse that part of the judgment which awarded post-termination commissions, but affirm that part of the judgment which awarded the stipulated amount of commissions due on the termination date. As a result, we conclude that Ellman was only entitled to an award of the stipulated amount of $12,774.02 in commissions due as of March 1, 2004.

B
The remaining issues raised in the appeal and cross-appeal relate to the award of counsel fees and costs. Kas argues the award of $48,736.95 was excessive; Ellman contends it was insufficient. Because our decision regarding the compensatory damages to which Ellman was entitled dramatically alters the landscape upon which the judge's fee award was based, we remand for a fresh look by the judge of the parties' contentions in this regard.
In providing guidance to the trial judge on remand, we emphasize that any fee that might be awarded to Ellman must be based upon the Sales Representatives' Rights Act, N.J.S.A. 2A:61A-1 to -7 (the Act). The Act requires that a principal is obligated to pay the "commissions and other compensation earned and unpaid through the last day of the contract" within 30 days. N.J.S.A. 2A:61A-2. Any violation of this provision renders the principal "liable to the sales representative for all amounts due the sales representative and all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs." N.J.S.A. 2A:61A-3(a). In addition, if the court "determines that an action brought by a sales representative against a principal pursuant [to the act] is frivolous, pursuant to [N.J.S.A. 2A:15-59.1], the sales representative shall be liable to the principal for attorney's fees actually and reasonably incurred by the principal in defending the action and court costs." N.J.S.A. 2A:61A-3(b).
The phrase "actually and reasonably incurred," which is contained in both subsections of N.J.S.A. 2A:61A-3, requires a finding that the fees sought must not only have been actually incurred and reasonable in amount, but must have resulted in a successful outcome for the fee applicant. Therefore, with regard to Ellman's application, the judge must first ascertain what fees were actually incurred by Ellman; that determination represents the ceiling for any award otherwise permitted by the Act.[4] The judge must then determine whether those fees represent a reasonable expenditure of time and effort for what was accomplished in the suit; the judge cannot award fees for efforts on those aspects of the case that proved unsuccessful.
*395 In explaining what the Act permits, we do not mean to suggest that we believe the judge is required to make any award to Ellman; we also do not mean to suggest that because of our reduction of the judge's award of damages that Ellman's claim was frivolous and warrants an award of fees to Kas.[5] Instead, as indicated earlier, we leave the entire matter to the judge's discretion and his principled application of the Act's requirements, which we have briefly outlined.
In addition, since Kas filed and served an offer of judgment, pursuant to R. 4:58, in excess of the $12,774.02 award, Kas should be provided with an opportunity to move for relief based upon R. 4:58, and, if such a motion is filed, the judge should consider whether Kas is entitled to counsel fees.
Again, we offer no view as to how these competing claims to fees may be resolved by the trial judge.

III
The March 13, 2006 judgment is reversed. The matter is remanded for the entry of an order that awards damages to Ellman in the amount of $12,774.02 and dismisses all his other claims for compensatory relief. The matter is also remanded for further proceedings on the parties' competing claims for attorneys' fees and costs. We do not retain jurisdiction.
NOTES
[1] The parties appear to have disagreed as to whether Ellman was bound by the restrictive covenant. That dispute, however, was inconsequential since Kas was entitled to terminate Ellman for any reason.
[2] The $48,736.95 award consisted of $33,972.72 in fees and $3,117.37 in costs to Ellman's Minnesota attorney, and $10,907.08 in fees and $739.76 in costs to Ellman's New Jersey attorney.
[3] Even if an interpretation of the February 27, 2004 letter as an admission was appropriate, the letter contained an offer of post-termination commissions for a two-month period ending on April 30, 2004 not the ten-month period represented by the judge's award of $15,987.33.
[4] For example, this statutory requirement prohibits an award to Ellman of fees in excess of what he was obligated to pay his Minnesota attorney pursuant to their contingency fee agreement. The judge's ascertainment of the contingency fee to which Minnesota counsel is entitled dictates the most that Ellman is entitled to for that attorney's work. Upon ascertaining that amount, the judge must then determine whether that fee is reasonable in light of the results obtained. We also observe that the judge should consider whether it was reasonable for Ellman to retain both Minnesota and New Jersey counsel in connection with this matter.
[5] Indeed, considering that we have reduced Ellman's award of commissions to the stipulated amount of commissions due as of the termination datewhich is less than what Kas offered to pay Ellman by way of its termination letter of February 27, 2004the judge would be entitled to determine that the fees incurred by Ellman in this action were unnecessarily or unreasonably incurred because they yielded no positive results for Ellman. On the other hand, Kas had an obligation to pay the $12,774.02 within the time prescribed by N.J.S.A. 2A:61A-2 notwithstanding Ellman's claim to more. The judge might therefore determine that Ellman was damaged by Kas's apparent breach of that requirement even though Kas also offered more than it was obligated to pay.