NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 15-2287

---

AETNA LIFE INSURANCE COMPANY; AETNA WORKERS' COMP ACCESS, LLC

v.

RARITAN BAY MEDICAL CENTER, a New Jersey Corporation,

Appellant

v.

FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY;
AETNA HEALTH, INC.;
COVENTRY HEALTH CARE, INC.

---

Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-11-cv-00871)
District Judge: Honorable Michael A. Shipp

---

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2016

Before: AMBRO, SHWARTZ, and FUENTES, Circuit Judges

(Filed: December 9, 2016)

OPINION[*]

AMBRO, Circuit Judge

Raritan Bay Medical Center, LLC ("Raritan") brought claims against Aetna Life Insurance Company and Aetna Workers' Comp Access, LLC (collectively, "Aetna") for breach of contract and breach of the implied covenant of good faith and fair dealing. The claims concern a contract called the Managed Care Agreement ("MCA").[1] The dispute initially centered on whether certain workers' compensation products were "issued, administered, or serviced by" Aetna and thereby entitled to discounted hospital reimbursement rates provided by the MCA.

The District Court for the District of New Jersey granted summary judgment to Aetna on all of Raritan's claims, holding that, even if the workers' compensation products were not covered by the agreement, Raritan failed to show that Aetna breached it or the implied covenant of good faith and fair dealing. We affirm.

## I. BACKGROUND

### A. The MCA

Under the MCA Aetna agreed to steer business to Raritan by listing the hospital in its Participating Provider directory. MCA § 10.1. In return, Raritan agreed to provide

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Raritan also brought a claim for negligent misrepresentation. It has not appealed the District Court's dismissal of that claim.

medical care at discounted rates to individuals, called "Members," who are "covered by or enrolled in a Plan." MCA §§ 12.9. A "Plan" is "[a]ny health benefit product or plan issued, administered, or serviced by [Aetna.]" MCA § 12.12. A Plan's "Payor" can be "[a]n employer, insurer, health maintenance organization, labor union, organization or other person or entity which has agreed to be responsible for" paying for medical care provided to Members under the terms of a Plan. MCA § 12.11.

When Aetna is not the Payor of a particular Plan, it must tell the Plan's Payor when to pay for services provided to the Plan's Members and must inform the Payor of the discounted rates in the MCA's Compensation Schedule. MCA § 3.1. The process by which bills are translated from Raritan's ordinary rates to the MCA's reduced rates is called "repricing." Raritan bills each Payor at Raritan's non-discounted rates, and Aetna then "reprices" the bill by lowering the dollar value of each charge to reflect the MCA's reduced rates.

**B. The AWCA Program**

Aetna retained the right to introduce new Plans during the course of the agreement. MCA § 8.2. It exercised this right in October 2003 by introducing the Aetna Workers' Compensation Access ("AWCA") program. Through that program, Aetna intended for certain workers' compensation products to become Plans under the MCA. It sent a letter by certified mail notifying Raritan of its choice to introduce the program and giving the hospital the opportunity to opt out. Raritan did not opt out before the program's effective date, so on January 1, 2004, it became a participating hospital in the AWCA network.

For five years Raritan regularly treated injured workers who were covered by the products of workers' compensation carriers participating in the AWCA program. It reevaluated its position in 2010, however, when it treated a worker with particularly costly injuries. The hospital's counsel communicated with Aetna and claimed that AWCA participants' products were not Plans as defined by the MCA, and thus the AWCA participants were not entitled to pay the MCA's discounted rates. Raritan also asserted a right to pursue additional payments from AWCA-participating workers' compensation carriers that had previously paid the MCA's discounted rates for services provided to injured workers.

### C. Litigation

Aetna responded by filing a declaratory judgment action seeking a ruling that Raritan was a Participating Provider, that AWCA participants were entitled to pay the MCA's reduced rates, and that Raritan was not entitled to any further reimbursement from AWCA participants, their Members, or Aetna. Raritan answered and filed counterclaims against Aetna for, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing.

Aetna moved for summary judgment on Raritan's counterclaims, which the District Court granted on all but the breach-of-contract counterclaim. The parties' contentions centered on MCA § 12.12, which, to repeat, defines "Plan" as "[a]ny health benefit product or plan issued, administered, or serviced by" Aetna.

The District Court held that there was a genuine issue of material fact whether the services Aetna provided AWCA participants were enough to make their products Plans.

The Court, however, granted summary judgment to Aetna on Raritan's "claim for breach of the implied covenant of good faith and fair dealing . . . because the record d[id] not indicate that a jury could conclude that Aetna was operating upon anything other than a good faith interpretation of the agreement." J.A. 146 (internal citation and quotation marks omitted). In addition, that Raritan and Aetna had different interpretations of the MCA "d[id] not mean that Aetna was operating in bad faith." *Id.*

At the Court's invitation, Aetna filed a second motion for summary judgment, which made a binary argument: first, if the AWCA participants' products were Plans, Raritan could not maintain its breach-of-contract claim because it received everything it was entitled to and suffered no damages; second, if the AWCA participants' products were not Plans, Aetna's conduct toward them (*i.e.*, repricing Raritan's bills at the MCA's rates) was not covered by, and therefore could not have breached, the MCA.

The Court adopted Aetna's argument, noting that "the MCA imposes no duty on Aetna to ensure that the health benefit plans, for which it re-prices services under the MCA, meet the parties' . . . definition of a 'Plan.'" J.A. 12. Raritan appeals.

## II. JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1332(a), and our Court has appellate jurisdiction under 28 U.S.C. § 1291. The District Court's summary judgment orders disposed of all of Raritan's claims, and Aetna's sole claim against Raritan—the declaratory judgment claim—was dismissed without prejudice per a joint stipulation.

Ordinarily we don't have jurisdiction over partial appeals "when [a party] has asserted a claim in the district court which it has withdrawn or dismissed without

prejudice." *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pa.*, 220 F.3d 193, 201 (3d Cir. 2000). However, "[a] final order is not absent just because the district court failed to adjudicate all of the claims that were at one time pleaded. Instead, an appellate court must determine whether, at the time it is examining its jurisdiction, there remain unresolved issues to be adjudicated in the district court." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 201 (3d Cir. 2004) (quoting *Aluminum Co. of Am. v. Beazer East, Inc.*, 124 F.3d 551, 560 (3d Cir.1997)).

There are no unresolved issues awaiting the District Court's decision. Aetna's declaratory judgment claim was largely the mirror image of Raritan's breach-of-contract claim. Thus the order granting summary judgment in favor of Aetna terminated the parties' dispute as far as the District Court was concerned.

Even if the declaratory judgment claim could be construed to reach entities beyond Aetna and Raritan, any questions beyond those resolved by the District Court's rulings are now moot. In its complaint seeking declaratory judgment, Aetna asked the Court to declare that Raritan was not entitled to any payments from Aetna *or AWCA participants* greater than what it had already received. Raritan opted out of the AWCA program on August 6, 2010, and the statute of limitations has run on any claims for additional reimbursement it might have brought against AWCA participants. *See* N.J. Stat. Ann § 2A:14-1 (six-year limitations period for tort and contract claims); *see also* N.J. Stat. Ann. § 34:15-51 (two-year limitations period for workers' compensation claims).

Accordingly, every component of Aetna's declaratory judgment claim is either moot or was finally decided as the mirror image of Raritan's contract claim. Hence we may exercise jurisdiction over Raritan's appeal. *Skretvedt*, 372 F.3d at 201.

## III. STANDARD OF REVIEW

District courts may grant summary judgment if, "drawing all inferences in favor of the nonmoving party, 'the pleadings, the discovery and disclosure materials on file[] and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 580–81 (3d Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). Our Court reviews the grant of summary judgment anew, applying the same standard as the District Court. *Id.*

We exercise fresh review as well on whether the law of the case doctrine applies to a particular matter. *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 988 F.2d 414, 429 (3d Cir. 1993). If the doctrine applies, the decision to invoke it is left to the discretion of the District Court. *Id.*

We review the District Court's decision whether to apply judicial estoppel for abuse of discretion. *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001).

## IV. ANALYSIS

Raritan raises fours grounds for reversal. None is compelling.

### A. Breach of Contract

Raritan contends that the words "serviced by" are sufficiently ambiguous to entitle it to a trial. If a jury finds that Aetna did not "service[]" the AWCA participants' products within the meaning of MCA § 12.12, the argument goes, Raritan will prevail on its breach-of-contract claim. This misses the point.

The District Court held that *even if* the AWCA participants' products were not Plans entitled to the MCA's reduced rates because Aetna had not "serviced" them, Raritan could not recover on its claim for breach. That is because the MCA contains no provision imposing obligations on Aetna "related to non-qualifying health benefit plans." J.A. 12. "[T]he terms of the MCA, and the corresponding rights and obligations imposed, are confined only to the qualifying Members or Plans." *Id.*

Because nothing in the MCA prohibits Aetna from informing non-Plans of the discounted rates, Raritan asks us to recognize obligations that it believes the MCA implied rather than stated outright. Under New Jersey law, "implied provisions may be deemed included within an express contract." *Kas Oriental Rugs, Inc. v. Ellman*, 926 A.2d 387, 392 (N. J. Super. Ct. App. Div. 2007); *see also* MCA § 11.2 (New Jersey law governs MCA). "Arrangements embodied in a contract may be such that the parties have impliedly agreed to certain terms and conditions which have not been expressly stated in the written document." *Onderdonk v. Presbyterian Homes of New Jersey*, 425 A.2d 1057, 1062 (N.J. 1981). "[B]ut these implied terms do not override express, inconsistent terms;

they are imposed to fulfill the intentions of the parties." *Kas Oriental Rugs*, 926 A.2d at 392.

Raritan argues that Aetna had the implied obligation to "*substantively* administer or service all of its plans in which [Raritan] was a participating provider" and that Aetna was impliedly prohibited from repricing Raritan's bills for workers' compensation products it did not service. *See* Raritan's Reply at 9-10 (emphasis added). If Aetna repriced bills for plans that it failed to administer substantively, Raritan contends that Aetna must pay it the difference between the hospital's initial bill and the repriced bill.

This fails to show that the obligations Raritan describes were implied by the MCA. While § 12.12 defines "Plan[s]" as "health benefit product[s] or plan[s] issued, administered, or serviced by" Aetna, it imposes no affirmative duty on Aetna to service any health benefit products or plans. Raritan points to MCA § 10.1, but that section only contains duties that Aetna owes to Raritan directly (like the duty to list it in Aetna's Participating Provider directory). Moreover, imposing an obligation on Aetna to pay the difference between Raritan's ordinary rates and the MCA's discounted rates on behalf of AWCA participants would conflict with the MCA's terms, which release Aetna from liability for other entities' failure to pay. *See* MCA § 3.4 ("[Aetna] shall have no obligation to pay [Raritan] . . . in the event that a Payor or Member fails to pay [Raritan], except where [Aetna] is the underwriter of the applicable Plan.").

Raritan asks the Court to impose obligations and provide remedies that the MCA does not. But a "court should not make a different or a better contract than the parties themselves have seen fit to enter into[.]" *Conair Corp. v. Old Dominion Freight Line,*

*Inc.*, 22 F.3d 529, 534 (3d Cir. 1994) (interpreting New Jersey law). Accordingly, the District Court was correct in holding that the MCA did not imply the obligations Raritan seeks to impose.

**B. Breach of Implied Covenant of Good Faith and Fair Dealing**

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). Although "[g]ood faith is a concept that defies precise definition[,]" the New Jersey Supreme Court has described it as "conduct that does not violate community standards of decency, fairness or reasonableness." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 864 A.2d 387, 395 (N.J. 2005) (internal citation and quotation marks omitted). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001).

Raritan argues that Aetna violated the implied covenant of good faith and fair dealing by repricing bills sent to the AWCA participants at the MCA rates when, in Raritan's view, their products were not Plans "serviced by" Aetna. MCA § 12.12. On Aetna's first motion for summary judgment, the District Court dismissed Raritan's breach-of-good-faith claim because there was nothing in the record to indicate Aetna acted other than in good faith. When Raritan attempted to revive its claim in its opposition to Aetna's second motion, the Court emphasized that Aetna's actions demonstrated good faith: it sent Raritan notice three months before the AWCA program was set to begin and gave the hospital the opportunity to opt out.

The most Raritan musters on appeal is that Aetna could have been even clearer in its notice introducing the AWCA program about the services it planned to provide AWCA participants. But even if Raritan might have opted out with more information, it points to no evidence that Aetna intentionally withheld information or otherwise acted in bad faith. The District Court thus properly granted summary judgment in favor of Aetna.

### C. Judicial Estoppel

Raritan contends that the District Court should have stopped Aetna from arguing in its second motion for summary judgment that even if AWCA participants' products were not Plans, it had not breached the MCA because, in Raritan's view, Aetna took a different position in its first motion.

"[J]udicial estoppel can be a draconian sanction[.]" *Klein v. Stahl GMBH & Co. Maschinefabrik,* 185 F.3d 98, 111 (3d Cir. 1999). "Though there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1) irreconcilably inconsistent positions; (2) adopted in bad faith; and (3) a showing that estoppel addresses the harm and no lesser sanction is sufficient." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009), *as amended* (Dec. 4, 2009) (internal brackets, quotation marks, ellipses, and citations omitted).

Raritan fails at step one. Aetna has not adopted inconsistent positions. In its first motion for summary judgment, Aetna argued that the products of AWCA participants were Plans entitled to the MCA's reduced rates. In its second motion, Aetna asserted that even if those products were not Plans, it did not breach the MCA by repricing the AWCA

participants' bills. Aetna's second argument is not inconsistent but merely an argument in the alternative.

Raritan also fails to show Aetna acted in bad faith. The hospital contends that it was bad faith to file a second motion for summary judgment so close to trial. But the District Court "in its discretion . . . invited the [second] motion [for summary judgment]." J.A. 9. Compliance with that invitation does not infer bad faith. Accordingly, Raritan's invocation of judicial estoppel is unconvincing.

**D. Law of the Case Doctrine**

Finally, Raritan argues that the District Court should not have granted summary judgment on Aetna's second motion because the law of the case doctrine prohibits courts from adopting inconsistent holdings on successive motions.

"[T]he law of the case doctrine does not limit the power of trial judges to reconsider their prior decisions [granting summary judgment]" as long as they "explain on the record why [they] [are] doing so and take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." *Roberts v. Ferman*, 826 F.3d 117, 126 (3d Cir. 2016) (internal citation and quotation marks omitted). The District Court easily clears this hurdle—it took care to explain the relationship between its decisions on the first and second motions for summary judgment, and Raritan had the opportunity to oppose new arguments raised in Aetna's second motion. J.A. 9, 12-13. In fact, by carefully explaining how its rulings fit together, the District Court did more than is required because the two decisions are consistent.

Raritan contends that the Court implicitly held in its first summary judgment ruling that all of Aetna's conduct with respect to the AWCA participants was governed by the MCA. This, it contends, conflicts with the Court's later ruling that, even if the products of AWCA participants were not Plans, Aetna's repricing of their bills did not violate the MCA.

Raritan is wrong. Aetna's first motion focused on the definition of the words "serviced by," and the Court merely held that they were "sufficiently ambiguous to preclude summary judgment." J.A. 13. Moreover, that does not conflict with the District Court's resolution of the second motion.

* * * * *

For these reasons we affirm the District Court's grant of summary judgment.