NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5660-14T4

NEW YORK-CONNECTICUT
DEVELOPMENT CORP.,

    Plaintiff-Respondent/
Cross-Appellant,

v.

BLINDS-TO-GO (U.S.) INC.,

    Defendant/Third-Party
Plaintiff-Appellant/
Cross-Respondent,

v.

ANTHONY NARDOZZI; CHRIS YEATES;
JM HALEY CORP.; BRAVANTE
AUTOMATIC SPRINKLER CORP.;
COUNTY GLASS & METAL INSTALLERS,
INC.; THYSSENKRUPP ELEVATOR
CORPORATION; JUSTAN ELECTRICAL
CONTRACTING, INC.; CURTI &
ASSOCIATES, LTD.; UNIQUE
MECHANICAL SERVICES, LLC; WHALEN
BEREZ GROUP, LLC,

    Third-Party Defendants-
Respondents.

_____

UNIQUE MECHANICAL SERVICES, LLC,

    Second Third-Party Plaintiff-
Respondent,

v.

NEW YORK-CONNECTICUT

| APPROVED FOR PUBLICATION |
| :---: |
| **AS REDACTED** |
| April 10, 2017 |
| |
| **APPELLATE DIVISION** |

DEVELOPMENT CORP.,

    Second Third-Party Defendant-
    Respondent.

_____

COUNTY GLASS & METAL INSTALLERS,
INC.,

    Fourth-Party Plaintiff-
    Respondent,

v.

NEW YORK-CONNECTICUT
DEVELOPMENT CORP., and
ANTHONY NARDOZZI, JR.,

    Fourth-Party Defendants-
    Respondents.

_____

Argued February 13, 2017 — Decided April 10, 2017

Before Judges Sabatino, Haas, and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5440-12.

David R. King argued the cause for appellant/cross-respondent Blinds-To-Go (Herrick, Feinstein LLP, attorneys; Mr. King, K. Heather Robinson, and Chantelle L. Aris, on the briefs).

Jessica L. Rothman (Ingram Yuzek Gainen Carroll & Bertolotti, LLP) of the New York bar, admitted pro hac vice, argued the cause for respondent/cross-appellant New York-Connecticut Development Corp. (Ingram Yuzek Gainen Carroll & Bertolotti, LLP, attorneys; Dean G. Yuzek and Kimberly L. Quintano, on the briefs).

A-5660-14T4

Jonathan H. Krukas argued the cause for respondent Unique Mechanical Services (Quinn McCabe LLP, attorneys; Mr. Krukas, on the brief).

Sean E. Regan argued the cause for respondent Whalen Berez Group (Giordano, Halleran & Ciesla, attorneys; Mr. Regan, of counsel and on the brief).

Steven R. Rowland argued the cause for respondent Justan Electrical Contracting (Brown Moskowitz & Kallen, P.C., attorneys; Mr. Rowland, of counsel and on the brief).

Christopher G. Fusco argued the cause for respondent Bravante Automatic Sprinkler Corp. (Callahan & Fusco, LLC, attorneys; Matthew Szymczak, of counsel and on the brief).

Kelly A. Zampino argued the cause for respondent County Glass & Metal Installers, Inc. (Hartmann, Doherty, Rosa, Berman, Bulbulia, attorneys; Richard M. Rosa, on the brief).

The opinion of the court was delivered by

CURRIER, J.A.D.

In this matter arising out of the construction of a building, we address whether a verdict can be sustained where the jury found that plaintiff, New York-Connecticut Development Corp. (NYCT), breached the pertinent contract, but nevertheless, awarded it damages under a quantum meruit theory. We conclude that once the jury determined that an express contract existed between the parties, it was erroneous for it to be directed to a

consideration of quantum meruit. Consequently, we are constrained to reverse and remand for a new trial.

I.

Plaintiff submitted a successful bid and was selected by defendant, Blinds-To-Go (U.S.) Inc. (BTG), as the general contractor to build its corporate headquarters. In February 2011, the parties signed a document entitled "GC [Guaranteed Cost] Contract Cost Plus Fee with GMP." The agreement contained the following language: "Based on the current set of drawings and information received to this date NYCT will enter into a contract with BTG with a Guaranteed Maximum Price, and a completion date of September 15th 2011" subject to conditions addressed within the agreement.

The agreement provided for a guaranteed price of $3,800,000 for the hard cost budget and a fixed GC fee of $200,000, setting the project's total price at $4,000,000.

Prior to the start of the project, the parties agreed to the use of change orders prepared by the contractor to advise the owner of additional work that was required beyond what was contained in the plans or the contract. Plaintiff was instructed to submit the change orders to the architect, Peter Wells. To request payment, plaintiff submitted a requisition to defendant. The document listed the new contract price resulting

4

from the addition of change orders and the payment due. As the construction progressed, plaintiff submitted thirteen change orders contained in ten requisitions totaling $461,000 for defendant's review and approval. After several meetings to discuss the orders, they were approved in August 2011. Defendant advised plaintiff that as the scope of the project was settled, the price should also be finalized as it considered the approved requisitions to be a complete list of additional work.

The building was not delivered to defendant on September 15, 2011, as per the contract. Although several new deadlines were set, it was not until March 16, 2012, that a certificate of occupancy (CO) was delivered by plaintiff.

On March 6, plaintiff presented an additional requisition (Requisition 11) for defendant's consideration. Defendant informed that it would pay the requisition upon receipt of the CO, the release of liens and the completion of the punch list. In response, plaintiff told defendant it did not intend to return to the job site. Although the requisition was paid several days later, plaintiff did no further work and failed to complete the punch list.

Plaintiff submitted a final requisition (Requisition 12) in June 2012 containing seventeen additional unapproved change orders with charges in excess of $1,000,000. Defendant offered

to compromise the requested amount, but received no response. Plaintiff filed this action in July 2012.

## II.

Plaintiff's complaint alleged a breach of contract or, in the alternative, a claim for quantum meruit against defendant. Defendant filed an answer and counterclaim for plaintiff's failure to complete the work in accordance with the contract, and a third party complaint against several subcontractors. The subcontractors in turn counterclaimed against defendant for the establishment of a lien fund and filed fourth party complaints against plaintiff for breach of contract.

> **[At the court's direction, the published version of this opinion omits the remainder of Section II concerning pre-trial procedural facts; Sections III(E) and (F) concerning the Prompt Payment Act and an attorney's charging lien, N.J.S.A. 2A:13-5; Sections IV(C), (D), and (E) regarding a lien fund, a discovery issue, and expert testimony dispute; and Sections V(A) and (B) concerning the PPA and attorney's charging lien. R. 1:36-2(a).]**

## III.

### A.

Prior to trial, defendant presented a summary judgment motion to dismiss the quantum meruit claim. The motion was denied as untimely under Rule 4:46-1 as the return date was less than thirty days prior to the trial date. On the first day of

trial, defendant advised the judge it had filed an in limine motion to dismiss the quantum meruit claim. The judge told defendant that he would not entertain an in limine motion that should have been presented as a summary judgment motion; under Rule 4:37-2(b), the application should be made at the end of plaintiff's case.

Trial commenced on March 16, 2015 and continued through April 2. During the jury charge conference on March 31, plaintiff's counsel queried whether it was necessary for the jury to be instructed on the various types of contracts because "whether there's a contract and what the contract is, is not in dispute." She said: "I don't know that it's disputed . . . that's the contract document." Defense counsel responded: "I'll accept . . . that, this is the contract and there was a contract." He then reiterated his argument, in light of the parties' agreement, that plaintiff was not entitled to quantum meruit.

> THE COURT: I agree. The jury is going to be charged in the alternative. If you find that it's a contract, then this is the relationship between the parties - -
>
> . . . .
>
> THE COURT: If there was no contract and this contractor just did the work under the expectation, reasonably, that it wasn't done as charity and he'd be paid, then he's entitled to Quantum Meruit. It's an

alternative cause of action, you don't get both.

[DEFENSE COUNSEL]: Right but the problem with that is, the plaintiff has taken the position and we agree that there is a contract.

THE COURT: Okay but they can argue in the alternative . . . .

. . . .

THE COURT: He can disagree and he can say, ladies and gentlemen, I'm convinced it's a contract and I think you're going to find that it's a contract but if I'm wrong and you don't believe there was a meeting of the minds I want you to know, my contractor did the work, it wasn't for free, they have a building, he deserves to be paid.

. . . .

THE COURT: Isn't that a reasonable alternative?

[DEFENSE COUNSEL]: I don't agree but I - - I - - that's not what the law says in my opinion but that's - -

THE COURT: Really?

. . . .

THE COURT: So you've never seen Quantum Meruit pled as an alternative to a bre[a]ch of contract claim?

[DEFENSE COUNSEL]: I don't believe, when you get to the trial and the plaintiff takes the position there is a contract, they get to plead in the alternative.

On April 1, defense counsel again raised the issue during a discussion of the proposed verdict form; we include the finalized verdict sheet for the reader's ease and clarity.

**<u>Breach of Contract</u>**

1.    Do you find that the parties entered into a binding Contract with terms and conditions governing performance and payment obligations for work on the Project?

_____ Yes       _____ No      Vote Count _____

**If you answered "Yes" proceed to Question 2.**
**If you answered "No" proceed to Question 11.**

2.    Do you find that NYCT performed it[s] obligations under the Contract?

_____ Yes       _____ No      Vote Count _____

**If you answered "Yes" proceed to Question 3.**
**If you answered "No" proceed to Question 11.**

3.    Do you find that BTG failed to satisfy its obligations under the Contract by: failing to pay NYCT for the work described in Change Order Nos. 14 through 30?

_____ Yes       _____ No      Vote Count _____

**If you answered "Yes" proceed to Question 4.**
**If you answered "No" proceed to Question 11.**

4.    Do you find that BTG failed to satisfy its obligations under the Contract by failing to pay NYCT the remaining $200,000 balance of retainage?

_____ Yes       _____ No      Vote Count _____

**If you answered "Yes" proceed to Question 5.**
**If you answered "No" proceed to Question 11.**

A-5660-14T4

5.   Do you find that NYCT was damaged by BTG's breach, or failure to satisfy its obligations under the Contract?

____ Yes      ____ No      Vote Count ____

**If you answered "Yes" proceed to Question 6.**
**If you answered "No" proceed to Question 11.**

6.   What amount of damages, if any, do you award to NYCT to compensate NYCT for BTG breaching the Contract by failing to pay NYCT for the work described in Change Order Nos. 14 through 30?

$_____      Vote Count ____

**Proceed to Question 7.**

7.   What amount of damages, if any, do you award to NYCT to compensate NYCT for BTG breaching the Contract by failing to pay NYCT the remaining $200,000 balance of retainage?

$_____      Vote Count ____

**Proceed to Question 8.**

**<u>Building Contracts — Substantial Performance</u>**

8.   Do you find that there has been such an approximation to complete performance by NYCT that the owner (BTG) obtains substantially what is called for by the Contract?

____ Yes      ____ No      Vote Count ____

**If you answered "Yes" proceed to Question 9.**
**If you answered "No" proceed to Question 11.**

9.   Do you find that the defects in the performance by NYCT are not so serious as to

deprive the owner (BTG) of the intended use of the building?

_____ Yes      No_____      Vote Count _____

**If you answered "Yes" proceed to Question 10.**
**If you answered "No" proceed to Question 11.**

10.  What is the amount you find is the fair allowance for defective work or omissions, if any, for which the owner (BTG) is entitled to credit?

$_____      Vote Count _____

**Proceed to Question 11.**

11.  If you decide that there was no binding contract between NYCT and BTG, but that BTG has retained the value of the work on NYCT or the work of its subcontractors under circumstances where one could not conclude the work was done for free, what amount do you award to NYCT as the reasonable value of the items of work described in Change Order Nos. 14 through 30 that were not included within the terms of the basic Contract between the owner (BTG) and NYCT?

$_____      Vote Count _____

This colloquy followed:

[DEFENSE COUNSEL]:  Your Honor, just one issue [about the jury verdict sheet].  I feel number one should only be pointed to [11] if they answer no. . . . [Y]ou're giving the option to go to [11] - -

THE COURT:  No.  If they answer - - it says under number one. . . .

If you answered no, proceed to question [11].

[DEFENSE COUNSEL]: Right. For two, three, four, and five . . . they also get to go to [11]. You should only go to [11] if you answered no for number one.

THE COURT: Well, what about number two? . . .

Well, if the plaintiff did not perform its obligations under the contract then it can't recover under the contract. And does it have any other avenue of recovering? . . .

Yes. Quantum meruit. . . .

Therefore go to [11].

. . . .

[DEFENSE COUNSEL]: But . . . they already agree that there is a contract. . . .

[J]ust note our disagreement with this, Judge. I don't believe they get to do both. I've said that from the beginning. . . .

THE COURT: [A]nd your record is clear. And they only get to go to [11] if a jury concludes there's no contract. There's no meeting of the minds. . . .

I don't know what you people are talking about. This building got put up. And, you know, and extra were done. But there was no true meeting of the minds. But they were done. And, clearly, should someone retain the value of it . . . or should someone pay for it?

. . . .

I've heard your objection. But . . . I'm going to leave it in there.

A-5660-14T4

B.

During trial defendant sought to call Robert Murray, its facilities manager and Director of Construction, as a fact witness. The proffer was that the witness would testify to problems that he had observed in the building, specifically with the heating, ventilating, and air conditioning (HVAC) system. He also examined parts of the building and found leaks in outdoor balconies that needed repairs. Because there was no expert report delineating damages caused by plaintiff or setting forth necessary repairs, the trial judge found the testimony lacked a causal nexus. He concluded that Murray's testimony would not assist the trier of fact in reaching any material issue and therefore barred the testimony.

During a preliminary conversation regarding the proposed jury verdict sheet on March 31, plaintiff's counsel advised the judge that the parties had agreed that the jury should answer questions regarding defendant's counterclaim for plaintiff's breach of contract. Defendant stated its counterclaim was for plaintiff's failure to deliver an LEED certified[1] building as

---

[1] Leadership in Energy and Environmental Design (LEED) is a building certification process that uses a point system to evaluate the environmental merits of a building, with the goal of encouraging the design and construction of water and energy
(continued)

promised in the contract. Defendant was not seeking money damages on its counterclaim but was asserting it as a defense to plaintiff's damage claim. Defense counsel stated:

> [T]here are obligations under the contract and even if the jury were to find that they're owed x dollars . . . they can certainly find that they failed to fulfil their obligations under the contract and the law is, if you don't fulfill your obligations under the contract, you may forfeit what you're owed under the contract . . . there's plenty of testimony about what the obligations were and some of the things that weren't done.

He continued:

> [T]he contract here says it's going to be a LEED building. The testimony is uncontra-dicted that it's not and I have plenty of testimony about why and I'm certainly entitled to argue to this jury that the plaintiff failed to hold up its end of the bargain and that's why it's not LEED now . . . and the jury can certainly make their own decisions on whether that should cost the plaintiff.

The judge determined that since defendant did not present a monetary amount of damages he had no proofs to present on the subject, and therefore, he did not have a substantiated breach of contract claim.

---

(continued)
efficient structures, while using sustainable materials and resources.

A-5660-14T4

The following day, defense counsel queried of the trial judge why he had removed the proposed jury questions regarding its counterclaim.  The judge responded:

> Because there are no proofs on the damages. Well, actually that's not fair.  [T]here is a question on this verdict sheet dealing with an allowance.  So to the extent that your counterclaim encompasses a claim . . . for the deductions for the retainage . . . . So I guess, they can accept that.

## C.

During the trial judge's instructions to the jury, he included detailed charges on the elements of a contract, and defined express and implied contracts.  After explaining the breach of contract concept, he stated:

> [Defendant] had a counterclaim. . . . In this case there is a limited counterclaim filed by the defendant against the plaintiff with regard to the retainage.  And it is for you to determine on instructions that we'll give you in a few minutes and upon the jury verdict sheet to determine if . . . the defendant is entitled to a credit based on the retainage for punch list items that weren't done . . . . [T]hat's the extent to which . . . I am permitting the defendant to have a counterclaim.

## D.

In his instructions to the jury regarding the verdict sheet the trial judge stated:

> So, we know in this case there's a breach of contract claim.  And, therefore, question number one asks you all to decide,

15

based on the law I gave you and all of the evidence that you'll have with you, do you find that the parties entered into a binding contract with terms and conditions governing performance and payment obligations for work on the project?  So, the answer to that is either yes or no.

Remember I gave you the law about contracts.  They can be written.  They can be oral.  They can be written and oral.  They can be, partly, based on conduct.  So, you have to sift through that evidence in the book and through the testimony to determine whether there was a contract.  And you answer that yes or no.

. . . .

So, you come to [question] number one.  You discuss it.  You then answer the question.  Do you find the parties entered into a binding contract with terms and conditions governing performance and payment obligations for the worker on the project; yes or no?  And the vote count; either 6/1 or 7/0.

So, you answer it yes, you're going to go to question two.  Because this is on a breach of contract claim.  What happens if you answer no?  Well, if you answer no you [the jury], basically, found there was no contract.  There was no agreement between the parties on the material terms that made up this deal.

Then what would you do?  Well, it says go to 11.  And why do we ask you to go to 11?  That's because the plaintiff, in this case, has in its pleadings said we contend and allege there's a contract.  But, alternatively, if for some reason a jury who is going to hear this case doesn't believe there's a contract then we're entitled to recover based on the reasonable value of the

16

services we rendered. That's in Latin called quantum meruit. What is it worth?

So, that's why the question and the directions under question number one say, well, if you answer yes you've answered the first part of the question about whether there's a contract positively so go to two. But if you answer it no, you've found there isn't a contract and the plaintiff may only recover, if it recovers at all, based on quantum meruit. What's the value of the services[?]

Let's assume you answered it yes. So, you go to question two. Do you find that the New York/Connecticut performed its obligations under the contract; yes or no? . . . If you answer yes you go to three. But, again, you're finding the elements if you answer yes to one and two, which are necessary to find there's a contract.

If you say it didn't perform its contract obligation, obviously and logically under the law I gave you, someone who doesn't perform its contract obligations is not entitled to recovery under the contract. That doesn't mean they - - the entity may not be entitled to recover under the alternate theory of what's the value of my services worth.

So, if you answer yes to question number two you go to question number three. If you answer no you go to question number 11 again. Because, again, you're finding, if you answer it no, that they haven't done what they're supposed to do under the contract and, therefore, not entitled to recover under the contract. But they may be entitled to recover under quantum meruit.

After discussing the next several questions, the judge stated:

And then, lastly, there's question 11. Which you only reach if under the first set of questions you've determined there's no contract or one of the necessary elements of the contract claim have not been met. Again, the plaintiff can only recover in this case, if it recovers at all, under two theories; breach of contract or quantum meruit.

He's entitled to a recovery under breach of contract if he proves all the elements of the contract. And that they're entitled to recover under the contract for the extras. And if you find that is not the case then your consideration can be you have determined, well, what value, if any, are they entitled to recover under a quantum meruit theory or an alternative theory.

After completing its deliberations, the jury returned its verdict:

1. Do you find that the parties entered into a binding Contract with terms and conditions governing performance and payment obligations for work on the Project?

<u>X</u> Yes      ____ No          Vote Count <u>7</u>

**If you answered "Yes" proceed to Question 2.**
**If you answered "No" proceed to Question 11.**

2. Do you find that NYCT performed it[s] obligations under the Contract?

____ Yes      <u>X</u> No          Vote Court <u>6-1</u>

**If you answered "Yes" proceed to Question 3.**
**If you answered "No" proceed to Question 11.**

. . . .

18                

11. If you decide that there was **no** binding contract between NYCT and BTG, but that BTG has retained the value of the work of NYCT or the work of its subcontractors under circumstances where one could not conclude the work was done for free what amount do you award to NYCT as the reasonable value of the items of work described in Change Order Nos. 14 through 30 that were not included within the terms of the basic Contract between the owner BTG and NYCT?

<u>$791,046.7</u>            Vote Count <u>6-1</u>

IV.

Defendant appeals both the jury verdict rendered on April 2, 2015 awarding plaintiff damages under the theory of quantum meruit, and the final order and judgment entered by the trial court on July 10, 2015, as well as several discovery orders and rulings. Plaintiff cross-appeals the dismissal of its claim under the PPA and the subordination of its attorney's lien to the lien claims of the third-party defendant sub-contractors. Third-party defendants oppose the defendant's appeal of the verdict and final judgment as well as plaintiff's cross-appeal regarding the lien claims.

A.

We review a jury verdict with a deferential standard. "However, when the facts are not contested and the trial court's decision turns on a question of law, the 'trial court's interpretation of the law and the legal consequences that flow

from established facts are not entitled to any special deference.'" Dempsey v. Alston, 405 N.J. Super. 499, 509 (App. Div. 2009) (quoting Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995)). In these circumstances, our review is de novo. Toll v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002) (citing Balsamides v. Protameen Chem., 160 N.J. 352, 372 (1999)).

Defendant contends that the trial court erred when it (1) permitted plaintiff to seek recovery under the theory of quantum meruit, and (2) instructed the jury to consider this quasi-contract claim when the parties' relationship was governed by an express contract. We agree.

Quantum meruit is a form of quasi-contractual recovery and is "wholly unlike an express or implied-in-fact contract in that it is 'imposed by the law for the purpose of bringing about justice without reference to the intention of the parties.'" St. Barnabas Med. Ctr. v. Cnty. of Essex, 111 N.J. 67, 79 (1988) (citations omitted). The equitable remedy is applicable only "when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437 (1992).

It has long been recognized, however, "that the existence of an express contract excludes the awarding of relief regarding

the same subject matter based on quantum meruit." Kas Oriental Rugs v. Ellman, 394 N.J. Super. 278, 286 (App. Div. 2007). "An implied contract cannot exist when there is an existing express contract about the identical subject. The parties are bound by their agreement, and there is no ground for implying a promise." E. Paralyzed Veterans Assoc. v. City of Camden, 111 N.J. 389, 410 (1988) (Clifford, J., dissenting) (quoting Moser v. Milner Hotels, 6 N.J. 278, 280 (1951)).

Here, the parties signed an agreement in preparation for the building project. There was a "'meeting of the minds' between the parties evidenced by a written offer and an unconditional, written acceptance." Morton v. 4 Orchard Land Trust, 180 N.J. 118, 129-30 (2004) (citing Johnson & Johnson v. Charmley Drug, 11 N.J. 526, 538-39 (1953)). Moreover, during the charge conference both sides agreed there was a contract. The judge, however, found there was "no meeting of the minds" and left the determination of whether there was an enforceable contract for the jury. This decision might have been harmless had the next set of jury instructions not been flawed.

The jury was instructed that if they found there was a binding contract they were then to determine whether there was a breach of that contract, i.e., whether plaintiff performed its

obligations under that contract. The jury answered that question "no." The judge stated:

> If you say it didn't perform its contract obligations, obviously and logically under the law I gave you, someone who doesn't perform its contract obligations is not entitled to recovery under the contract. <u>That doesn't mean they - - the entity may not be entitled to recover under the alternate theory of what's the value of my services worth.</u>
>
> [(Emphasis added).]

This was error. Although a party may plead and pursue alternative, and even inconsistent, theories, <u>Kas</u>, <u>supra</u>, 394 <u>N.J. Super.</u> at 287, a party is not entitled to <u>recover</u> on inconsistent theories. <u>Ibid.</u> (emphasis added). Once the jury found there was an enforceable contract between the parties, plaintiff was not entitled to recover damages under quantum meruit.[2]

The jury instructions and verdict sheet both misstated the applicable legal principles of contract law. In answering question eleven, the jury demonstrated it did not understand it was prohibited from awarding damages under quantum meruit as a

---

[2] We note the further confusion raised by the verdict sheet as question 11 (quantum meruit) read: "If you decide that there was <u>no</u> binding contract between [the parties]. (Emphasis added). The jury had already determined there was a binding contract in question 1 and yet were still instructed to proceed to question 11.

A-5660-14T4

result of finding the existence of a contract in question one. The jury cannot be faulted; it was instructed to proceed to a determination of quantum meruit despite having found that plaintiff had breached the contract.

The failure to provide clear and correct jury charges and instructions on the verdict sheet is error and requires a reversal of the verdict in this case. "A charge is a road map to guide the jury, and without an appropriate charge a jury can take a wrong turn in its deliberations . . . . [T]he court must explain the controlling legal principles and the questions the jury is to decide." Das v. Thani, 171 N.J. 518, 527 (2002) (alterations in original) (quoting State v. Martin, 119 N.J. 2, 15 (1990)). Therefore, "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. Afanador, 151 N.J. 41, 54 (1997) (citing State v. Brown, 138 N.J. 481 (1994)).

Although defendant sought the dismissal of the quantum meruit claim in a summary judgment motion filed prior to trial, and in an in limine motion presented at the commencement of the trial, the judge declined to consider the argument on both occasions. On remand, in the unlikely event the parties do not enter a stipulation that there was a contract governing this project, the trial judge should address defendant's motion. If

23

the court determines there is a viable dispute as to the existence of a contract, and leaves that determination to the jury, the verdict sheet must reflect that if a jury finds a contract, it may not proceed to a consideration of quantum meruit.

## B.

The flawed verdict sheet also foreclosed the jury from considering defendant's counterclaim. The form included question ten, which provided for a credit to defendant for defective work or omissions of plaintiff as found by the jury. However, the instructions directed the jurors to a consideration of quantum meruit (number 11) after its finding that plaintiff had breached the contract. The jury should have been directed in the "road map" instructions to consider the counterclaim. The jury instructions following a new trial must reflect this correction.

In sum, the jury must consider whether defendant performed its duties under the contract, and if not, whether that breach caused a loss to plaintiff, and the appropriate reasonable compensation. The jury should then consider whether plaintiff performed its obligations under the contract. If not, the jury must consider whether defendant is entitled to a credit as its counterclaim.

24

V.

We remand the matter for a new trial on all issues that the parties have not resolved by agreement or stipulation.

Reversed and remanded for a new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5660-14T4