**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5237-17T1

IN THE MATTER OF THE ESTATE
OF HARRIET ROSS,
Deceased.

_____

Argued March 18, 2019 – Decided April 3, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000258-16.

David O. Marcus argued the cause for appellant Jeffrey Ross (Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, attorneys; Michael Profita, on the briefs).

Paul N. Ambrose, Jr. argued the cause for respondent Leslie Ross (Cullen and Dykman, LLP, attorneys; Paul N. Ambrose, Jr., of counsel and on the brief; Steven N. Siegel, on the brief).

PER CURIAM

In this estate dispute, defendant appeals from three orders: (1) an April 20, 2018 order enforcing a settlement agreement; (2) a June 28, 2018 order granting in part and denying in part defendant's motion for reconsideration and

amending the April 2018 order; and (3) a July 11, 2018 amended order denying defendant's motion for reconsideration in full and clarifying the April 20, 2018 order. We affirm.

I.

Harriet Ross, the decedent, died in December 2014 and her Last Will and Testament was admitted to probate. The will named decedent's son, defendant, executor. Defendant and his sister, plaintiff, (collectively the parties) are the primary beneficiaries, and the will established a testamentary trust for each of them. Specifically, the will provided that 40% of the decedent's net residuary estate was to be distributed to plaintiff's trust, and the remaining 60% was to be distributed to defendant's trust. As of May 2017, the net residuary estate consisted of approximately $2.2 million, of which approximately 76% consisted of annuities payable to the estate as beneficiary.

In July 2016, after a dispute arose over the administration of the estate, plaintiff filed a verified complaint and an order to show cause (OTSC) to remove defendant as executor and compel an informal accounting of the estate. The court ordered mediation, which resulted in the parties entering into a hand-written Settlement Agreement (the Agreement). Shortly thereafter, additional disputes arose over the terms of the Agreement. The parties exchanged

counteroffers to resolve the remaining issues, but they could not reach a resolution. The parties engaged in mediation again, but they still could not reach an agreement. Plaintiff filed a motion and defendant filed a cross-motion to enforce the Agreement.

On April 20, 2018, the judge issued an order and written decision enforcing the Agreement and resolving the parties' remaining disputes (the April 2018 order). Defendant filed a motion for reconsideration and a stay. Plaintiff filed a cross-motion to remove defendant as executor. On June 28, 2018, the judge issued an order and written opinion amending the April 2018 order and granted in part and denied in part defendant's motion for reconsideration (the June 2018 order). The June 2018 order amended the value of the decedent's IRAs at the time of her death. On July 11, 2018, the judge issued an amended order and written opinion denying defendant's motion for reconsideration in full (the July 2018 order). The judge explained that the June 2018 order amended the date-at-death value of the decedent's IRAs but kept all other provisions of the April 2018 order. Defendant filed a motion for a stay in this court, which we denied. Defendant then filed a motion for reconsideration, which we also denied.

A-5237-17T1

## II.

It is well-settled in this State that there is a strong public policy favoring settlement of litigation. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). A settlement agreement between parties is a contract. Ibid. Thus, "absent a demonstration of fraud or other compelling circumstances," a court should enforce a settlement agreement as it would any other contract. Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (quoting Pascarella v. Bruck, 190 N.J. Super 118, 124-25 (App. Div. 1983)). A motion judge's task is "not to rewrite a contract for the parties better than or different from the one they wrote for themselves," but to "determine the intention of the parties to the contract as revealed by the language used [by them.]" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (alteration in original) (internal quotation marks and citations omitted). Our review of a motion judge's interpretation of a contract is de novo. Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 285 (App. Div. 2007). However, "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974).

On appeal, defendant essentially argues that the judge erred by interpreting the Agreement to require that he fund both trusts by the end of 2018.

At oral argument before us, defendant's counsel reported for the first time that defendant funded both trusts. Such an assertion obviates the need to address defendant's contention that the judge erred by requiring defendant fund both trusts. Nevertheless, we briefly address the merits of defendant's arguments, and conclude the judge made no such error.

Paragraph 6 of the Agreement provides, "The estate will be wound up and [plaintiff]'s trust implemented by 7-31-2017." The Agreement was handwritten and Paragraph 6 was edited, with plaintiff's name added after "and" and before trust and the "s" in "trusts" was crossed-out. The parties initialed next to the paragraph. Defendant asserts that he insisted on this revision because in 2015, he elected with the annuity companies to take distributions over a five-year period, through 2019, in order to minimize income estate tax liability. On the other hand, plaintiff asserts that the estate was to be closed and both trusts were to be funded by a date set by the court.

In the April 2018 order, the judge instructed defendant distribute "as soon as reasonably practicable" 40% of the net estate balance to plaintiff's trust, and the remaining 60% to his trust. In his written opinion, the judge explained that the parties proposed two different alternatives because the Agreement's original requirement that the estate be "wound up" and plaintiff's trust be funded by July

2017 was at that point impossible, as it was already 2018. After considering the plain language of the Agreement and both party's proposals, the judge held that, "[P]aragraph 6 [of the Agreement] requires the estate to be settled and distributed promptly, not held open so that [defendant] can take distributions over three years." He stated that, "[t]he commonsense assumption is that the estate would be finalized shortly after the parties settled all their outstanding disputes in mediation. This is especially likely in light of the textual mandate that the estate be 'wound up.'"

Likewise, we also conclude that Paragraph 6 of the Agreement contemplated that the estate would be settled and distributed, and not held open for defendant to receive distributions over several years. The Agreement explicitly states that the estate would be "wound up." The phrase "winding up" is often used in the business context, and it means, "[t]he process of settling accounts and liquidating assets in anticipation of a partnership's or a corporation's dissolution." Black's Law Dictionary (10th ed. 2014). Moreover, as the judge noted in his decision in April 2018, the fact that Paragraph 6 only expressly identified plaintiff's trust does not mean that defendant's trust could be held open for several more years.

III.

Defendant also contends that the judge erred by holding that under the tax law, defendant was able to file the estate's final tax return by the end of 2018 and avoid extending the administration of the estate into 2019. At oral argument before us, defendant's counsel informed us for the first time that since the issuance of the July 2018 order, a different judge entered an order allowing defendant to file a final income estate tax return in 2019. Apparently the subsequent order was entered without seeking leave from us for a limited remand. Although the order has not been produced in this appeal, plaintiff's counsel did not object to the 2019 filing date. Defendant's counsel has withdrawn, as moot, defendant's previous argument that the judge erred by requiring the estate's final tax return by the end of 2018. In other words, the 2019 filing date is no longer an issue on appeal. Nevertheless, we add these brief remarks.

Defendant argues that he would need to file tax returns in 2019 for the distributions that occurred in 2018. To support this contention, defendant points to the revision of paragraph 1(e) of the Agreement, which provides, "income taxes due in 2016 and 2017 – 1041 tax returns to be paid by the estate; allocated to the distributee." The phrase "allocated to the distributee" was added and the

parties initialed in the margin. Defendant maintains that this revision was included so that potential income taxes of the estate would be allocated and passed-through to the distributees' representative trusts, because according to defendant, the parties agreed that defendant would take distributions to his trust through 2019.

In the June 2018 order, the judge amended the April 2018 order and issued another written decision, in which he explained that earlier, he deferred decision on the issue and instructed the parties to submit opinions from their respective certified public accountants (CPAs). After receiving both CPAs' reports, the judge found that "[d]efendant is able under the tax law to file the estate's final return before the end of 2018 and avoid extending the estate into 2019 in any way."

We agree. The judge reviewed the evidence and considered the reports provided by both sides. The judge acknowledged that there was no material dispute – both CPAs agreed that final estate income tax return could be filed in 2018. The judge specifically noted that defendant's CPA focused on when defendant could terminate the estate and when his administrative duties would end, not whether he was legally able to file a "short-period" tax return. The

8

judge reviewed and considered both reports and based his decision on substantial credible evidence.

IV.

Defendant maintains that the judge erred in establishing the amount of the reserve for additional estate taxes and administrative expenses. The Agreement did not set forth an amount for the reserve, and so the judge requested the parties provide their proposed amounts. Plaintiff proposed a $25,000 reserve and defendant proposed a $50,000 reserve. The judge held that $25,000 was sufficient for the reserve:

> As a practical matter, it is now unavoidable that the estate will pay income tax for 2018 up until the final distributions are made and will file a final tax return by April 2019. Once the parties receive their final distributions, they will be accountable for their own respective taxes as normal. As to the reserve amount, the court determines that $25,000 is adequate to cover both the expected taxes and any remaining administration expenses, especially in light of the $19,948 sum recorded for the entire 2016 tax year.

On appeal, defendant seeks to reduce the net assets of the estate by another $25,000 (thus equaling a $50,000 reserve), which would result in 40% of the additional amount being withheld from plaintiff's trust. Defendant argues that it was understood at the time of the execution of the Agreement that he would establish the amount at the time of the distribution to plaintiff's trust based on

9

his knowledge of the financial affairs of the estate. Defendant also contends that the judge should have conducted an evidentiary hearing to determine an adequate amount for the reserve. Defendant cites Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191-92 (App. Div. 2002), in which we explained the role of an appellate court when reviewing a contract. We stated,

> when in the context of the document itself and the transaction to which it pertains the terminology employed, despite a facile simplicity, actually is not free from doubt as to its meaning, the party is permitted to introduce proof of extrinsic circumstances bearing on the alleged proper interpretation of the language used.
>
> [Id. at 192.]

But the judge did consider extrinsic circumstances. He heard the parties at oral argument, and he primarily based his decision on defendant's submission of the tax burden of the estate in 2016.

We see no abuse of discretion. The Agreement did not provide an amount for the reserve; it simply provided that a reserve would be created. Thus, after hearing the parties at argument in November 2017 and June 2018, and reviewing each party's proposal, the judge determined that $25,000 was an adequate amount. The judge made this finding in light of his holding that the estate would be "wound up" and settled within 2018. The judge also based his decision on

10

defendant's admission that the estate's state and federal tax burden for 2016 totaled $19,948.

V.

Furthermore, defendant argues that the judge erred in determining that the April 2018 order limited the parties' reimbursement of attorneys' fees to those fees accumulated prior to mediation. Defendant's contention is belied by the record. Paragraph 1(c) of the Agreement provided that plaintiff would be reimbursed $55,000 for counsel fees from the estate. Paragraph 1(d) provided that "[a]dditional counsel fees" of defendant in the amount of $8000 would be paid by the estate. A plain reading of the Agreement suggests that the parties intended to cap the reimbursement of counsel fees as provided under Paragraph 1. As noted by the judge, Paragraph 7 of the Agreement provided that the matter was dismissed "without costs." The only other mention of counsel fees, found in Paragraph 9, contemplates a party having to go to court because of the unwillingness of the other party to perform according to the Agreement. The judge explicitly found that that was not the case. The judge found that neither party was fully successful, and under all of the circumstances, the parties should bear their own fees. The judge did not abuse his discretion.

11

## VI.

Lastly, we turn to defendant's contention that the judge sua sponte reconsidered the June 2018 order amending the date-of-death value of the decedent's IRAs. On June 28, 2018, on the parties' motions for reconsideration, the judge granted defendant's motion in part and amended the date-of-death value of the decedent's IRAs from $358,812.23 to $357,180.55. On July 11, 2018, without either party filing a motion, the judge issued an order denying defendant's motion for reconsideration in full. The judge also issued a letter to the parties' counsel explaining the reasoning for the amended order:

> This correspondence regards the [c]ourt's [o]rder of June 28, 2018. In his briefing and oral argument on the underlying motion for reconsideration, [plaintiff's attorney] strenuously objected to [d]efendant's position that [d]ecedent's IRAs were valued at $357,180.55 on her date of death. Nonetheless, the [c]ourt granted [d]efendant's motion on this point alone, amending the date-of-death value from $358,812.23 to $357,180.55 but otherwise preserving the original April 20, 2018 [o]rder.
>
> The [c]ourt first observes that the difference in the parties' positions is truly minimal: [p]laintiff's valuation is merely $1,631.68 greater than [d]efendant's, a fraction of a percent of the assets' total value. However, in the interest of finally resolving any remaining issues in this case, the [c]ourt has agreed to revisit the parties' proofs. The [c]ourt now determines that its prior order was in error. The figure cited by [p]laintiff – $358,812.23 – correctly reflects the

aggregate value of [the d]ecedent's three IRA accounts[.]

The judge listed the three IRA accounts and their value, which totaled $358,812.23. He also noted that defendant's valuation of the accounts was incorrect because defendant included only two IRA accounts and one annuity. The judge reasoned that the amended valuation was correct for two reasons. First, the Agreement explicitly provided that the subject accounts were the decedent's IRAs. Second, the Agreement explicitly stated, "[t]he decedent's IRAs now held by [defendant] are valued at $358,812.23."

Rule 1:13-1 provides that,

> [c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court on its own initiative or on the motion of any party, and on such notice and terms as the court directs, notwithstanding the pendency of an appeal.

However, this rule "clearly provides no authority for the trial court's reconsideration of its own orders and judgments." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:13-1 (2019). Rule 4:49-2 provides in pertinent part, "[e]xcept as otherwise provided by [Rule] 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than [twenty] days after service of the judgment or order

13

upon all parties by the party obtaining it." An error may be clerical or substantive. See Belfer v. Merling, 322 N.J. Super. 124, 137 (App. Div. 1999); see also Wicks v. Central R.R. Co., 129 N.J. Super. 145, 149 (App. Div. 1974) (stating that the allowance of prejudgment interest was not a result of a judicial decision but from a clerk's error, and thus, the motion to correct the error was not subject to the requirements of Rule 4:49-2).

Here, the July 2018 amended order was not the result of a clerical error. It was the result of a substantive error. Indeed, the judge stated that the June 2018 order was "in error" and explained his reasoning for changing his mind. Nevertheless, we conclude that the judge's ultimate conclusion, that is, that the value of the IRAs was $358,812.23 is correct. The April 2018 order states, "[t]he decedent's IRAs now held by [d]efendant were valued at the date of the decedent's death at $358,812.23." Moreover, as explained by the judge in the July 2018 order, it explicitly stated in the Agreement that the value of the decedent's IRAs at the time of her death was $358,812.23, not $357,190.55. In light of the nominal difference between the two numbers and the parties' explicit valuation of the IRAs in the Agreement, we vacate the June and July 2018 orders only as to the amendment of the IRA's date-of-death value. Thus, the value of

the IRAs at the time of decedent's death – $358,812.23 – correctly stated in the April 2018 order stands.

To the extent we have not addressed any of defendant's arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION