**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1288-23

HELENSBURGH VENTURES, LLC,

    Plaintiff-Respondent,

v.

GEORGE R. GILMORE,

    Defendant-Appellant,

and

THOMAS E. MONAHAN,

    Defendant.

_____

Submitted March 10, 2025 – Decided April 28, 2025

Before Judges Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2096-20.

Lavery, Selvaggi & Cohen, PC, attorneys for appellant (Michael B. Lavery, on the briefs).

Montgomery McCracken Walker & Rhoads, LLP, attorneys for respondent (Louis R. Moffa, Jr., and Deanna R. Olivero, on the brief).

PER CURIAM

Defendant George R. Gilmore appeals from a Law Division decision granting summary judgment to plaintiff Helensburgh Ventures, LLC ("Helensburgh"). Gilmore not only argues that the trial court improperly granted summary judgment because genuine issues of material fact existed in the record to preclude that relief, but also contends that the trial court incorrectly suppressed his answer and affirmative defenses before Helensburgh's motion to suppress was returnable. We agree and reverse the order granting summary judgment. We also restore Gilmore's answer and counterclaims and remand to the Law Division.

I.

In 2007, Helensburgh lent Gilmore and Thomas E. Monahan,[1] two law partners, $250,000 to be repaid with interest over the following two years. The parties negotiated a promissory note and supported their obligation with a mortgage given by Rose Reehill, Gilmore's mother-in-law, and Joanne Gilmore, defendant Gilmore's spouse, on property Reehill and Joanne Gilmore

---

[1] Thomas E. Monahan was originally named in the complaint; however, he has been dismissed from this litigation.

owned in Toms River.  In November 2019, Helensburgh invoiced Gilmore, claiming principal and interest was due under the note.

In September 2020, Helensburgh sued Gilmore in the Law Division to recover the amounts purportedly due to it under the promissory note.  Alleging that Gilmore breached the contract, was unjustly enriched, and broke its duty of good faith and fair dealing, Helensburgh asserted that it was entitled to recover the entire principal amount, interest, and late fees.  Gilmore answered the complaint and raised affirmative defenses.

In May 2021, Helensburgh served discovery requests but Gilmore did not respond to them.  Then, in August 2022, the trial court intervened and ordered Gilmore to respond to the interrogatories by a date certain.  When that deadline passed, Helensburgh moved to suppress Gilmore's answer and defenses under Rule 4:23-5(a)(1).[2]  The day before the return date of the motion, Gilmore provided the answers.  Despite this late response, the trial court granted the requested relief in November 2022.

In March 2022, while the Law Division matter was pending, Helensburgh filed companion litigation in the Chancery Division to foreclose

---

[2] Rule 4:23-5(a)(1) requires a trial court to dismiss a complaint or strike responsive pleadings of a party that is non-compliant with discovery requests without prejudice.

on the mortgage that collateralized the promissory note. In January 2023, the Chancery Division granted summary judgment to Helensburgh and concluded there was no genuine issue of material fact in the foreclosure action that defendants in that case defaulted.[3]

In May 2023, following the ruling from the Chancery Division, Helensburgh moved for summary judgment in the Law Division matter. In August 2023, the Law Division judge granted that relief as to Gilmore's liability. However, it denied it as to damages because Helensburgh did not provide sufficient documentary proof to establish them. In September 2023, Helensburgh presented that evidence and moved for reconsideration. Gilmore cross-moved to vacate the prior suppression order. In November 2023, the Law Division judge entered judgment for $431,125 against Gilmore and denied Gilmore's request to vacate the Law Division suppression order.

Gilmore now appeals the Law Division orders.[4]

---

[3] We note that the defendants in the Chancery Division foreclosure litigation were Gilmore, Joanne Gilmore (his spouse), the Estate of Rose Reehill, and Mary Evens. The property at issue in the foreclosure action was owned by Joanne Gilmore, as Administrator of the Estate of Rose Reehill, and Mary Evens. Gilmore did not have a deeded property interest in this property.

[4] The parties in the foreclosure action have not appealed the Chancery Division judgment.

II.

Gilmore argues that the trial court should have restored his answer and counterclaim because he met his discovery responsibilities. Helensburgh argues the trial court was correct when it denied Gilmore's request to restore his answer and counterclaim because the discovery was furnished late and did not fully respond to the questions asked. Gilmore disagrees and contends the discovery responses were sufficient. We agree the trial court erred in striking Gilmore's answer and suppressing defenses.

Our review of a trial court's discretionary decision related to the restoration of a pleading dismissed for failure to provide discovery is limited. A & M Farm & Garden Ctr. v. Am. Sprinkler Mech., L.L.C., 423 N.J. Super. 528, 534 (App. Div. 2012). To that end, we should interfere only if injustice results. Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 93 (App. Div. 2008).

"It is well-established that the main objective of the . . . process set forth in Rule 4:23-5 is to compel discovery responses rather than to dismiss the case." A & M Farm, 423 N.J. Super. at 534. That objective is in line with a basic "tenet of our jurisdiction that resolution of disputes on the merits [is] to be encouraged rather than resolution by default for failure to comply with

5

procedural requirements."  St. James AME Dev. Corp. v. City of Jersey City, 403 N.J. Super. 480, 484 (App. Div. 2008).  "Rule 4:23-5 advances this goal, while affording an aggrieved party a remedy to compel production of the outstanding discovery and the right to seek final resolution through a dismissal process."  Ibid.

We do not condone Gilmore's lack of promptness to meet his discovery obligations.  However, Helensburgh concedes that Gilmore did respond before the return date of its motion, although the parties disagree that the answers were complete.  It is theoretically possible that the trial court was unaware of Gilmore's discovery responses since they were provided on the day before the motion return date.  However, the trial court would certainly have been aware of that circumstance when Gilmore moved to vacate the suppression order.  If Gilmore's responses were deficient, Helensburgh could have moved to compel more specific responses to the requests under Rule 4:17-5.  Both would permit substantive consideration of the merits of Gilmore's claims rather than support a resolution based on procedure.  The Tr. Co. of N.J. v. Sliwinski, 350 N.J. Super. 187, 192 (App. Div. 2002) ("whenever possible, litigation should be resolved on the merits rather than on procedural violations.").

A-1288-23

Since the trial court declined to vacate the suppression of Gilmore's pleadings despite Gilmore having met his discovery obligation, it mistakenly exercised its discretion. St. James AME Dev. Corp., 403 N.J. Super. at 484 (holding that "[w]hether to grant or deny a motion to reinstate a complaint lies within the sound discretion of the trial court.").

III.

Gilmore also argues the trial court should not have granted summary judgment because genuine issues of material fact existed regarding his purported default under the promissory note because of the relationship he and Monahan had with Robert Hutchins, Helensburgh's registered agent, to provide professional services to offset the specific amounts due under the promissory note. We agree.

We review the trial court's grant of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether "'the moving party [was] entitled to a judgment or order as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 540 (1995) (quoting Rule 4:46-2(c)).

A-1288-23

If genuine issues of material fact are revealed after a consideration of the competent evidence in the motion record and all legitimate inferences made in favor of the non-moving party, summary judgment should not be granted. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citing R. 4:46-2(c); Brill, 142 N.J. at ? 540). A "genuine issue of material fact" is a disputed issue of fact that is of a substantial nature and has real existence. Brill, 142 N.J. at 523, 529. A fact is "material" if it "affect[s] the outcome of the suit under the governing law." Matter of R.S., 258 N.J. 58, 78-79 (2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

A.

We conclude the court erred in granting summary judgment because genuine issues of material fact exist as to whether there existed a barter system among the parties that impacted the payoff and amount due under the note.

Specifically, the record in opposition to summary judgment contained the depositions of Hutchins, the individual plaintiff named as Helensburgh's registered agent, and Gilmore. Hutchins testified he prepared Gilmore's taxes and loaned him money at various times in the past. He stated:

> Tom Monahan was my firm's attorney handling collection work, leases, and various day-to-day smaller-level ——and periodically we would get together and compare what bills were owed to whom

8

and we'd settle up. We had a professional discount that we agreed to and if I owed them money or they owed me money, then we would have to settle up.

Although Helensburgh argues Hutchins had nothing to do with the LLC, the record reveals Hutchins is its registered agent. The record also reveals there are genuine issues of material fact regarding the relationship among the parties to this litigation and whether they had an arrangement to offset the financial obligations of the promissory note with the rendering of professional services. Certainly, Hutchins's sworn testimony alludes to such an arrangement. As a result, we find that the trial court improperly granted summary judgment.

B.

Additionally, we agree with Gilmore the trial court improperly concluded that Gilmore was collaterally estopped from raising his substantive issues in the Law Division because of the Chancery Division order granting summary judgment to Helensburgh in the companion foreclosure action.

The doctrine of collateral estoppel prevents the re-litigation of issues formerly adjudicated and of those that have been fully disposed. Barker v. Brinegar, 346 N.J. Super. 558, 565-66 (App. Div. 2002). This concept is rooted both in equity and in judicial efficiency and prevents the duplication of

lawsuits with the same issues, the same parties, and the same witnesses. Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 26 (1989); see In re Est. of Gabrellian, 372 N.J. Super. 432, 446 (App. Div. 2004).

For collateral estoppel to apply, the issues in the present matter must be identical to the ones presented in the prior proceedings, the issues must have been actually litigated in the prior proceeding, the court must have entered a final judgment, the issues raised in the new complaint must have been essential to the prior judgment, and the party against whom collateral estoppel is asserted must have been a party in the earlier proceeding. Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (citing Matter of Est. of Dawson, 136 N.J. 1, 20-21 (1994)).

In the mortgage foreclosure action before the Chancery Division, Helensburgh only need prove the validity of the note and mortgage, an alleged default, and the right to foreclose. Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994). To recover money damages in its companion litigation before the Law Division, Helensburgh would have different proofs presented by different witnesses because it would be required to establish different elements under its breach of

contract, unjust enrichment, and breach of good faith and fair dealing claims.[5]

Additionally, the current record also reveals that the Chancery Division did not enter a final judgment in the foreclosure litigation and that the named parties in both actions are different. Therefore, we do not find that Gilmore is collaterally estopped from raising his claims and pursuing his defenses in the Law Division litigation.

To the extent we have not addressed any of the parties' arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

---

[5] To recover damages for a contractual breach, a plaintiff must prove the parties entered into an agreement with certain terms, that plaintiff did what the contract required them to do, that defendants did not do what the agreement obligated, and plaintiff suffered a consequent loss. Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (quoting Model Jury Charge (Civil), § 4.10A "The Contract Claim-Generally" (May 1998)). Unjust enrichment claims apply when parties do not have a contract. See N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.) Inc., 449 N.J. Super. 542, 556 (App. Div. 2017). To prove a claim for unjust enrichment, a plaintiff must "show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 549, 554 (1994). Similarly, in New Jersey, every contract contains an implied covenant of good faith and fair dealing. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). Conduct that offends "good faith" impairs "community standards of decency, fairness, or reasonableness." Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001) (quoting Restatement (Second) of Contracts § 205 comment a (1981)). Damages might be awarded against a defendant that does anything that "destroy[s] or injur[es] the right of the other party to receive the fruits of the contract." Wilson, 168 N.J. at 245 (quoting Sons of Thunder, 148 N.J. at 421).

11

Reversed and remanded.  We neither retain jurisdiction nor take any position on the outcome of this matter on remand.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division